**In the Interest of K.D.H., a Child.**

No. 14–13–00006–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 3, 2014.

Patricia Ruby Billings, Humble, for Appellant.

Daniel Higgins, Laporte, pro se.

Jennifer Kegeresse, Laporte, pro se.

Panel consists of Chief Justice FROST and Justices BOYCE and JAMISON.

## OPINION

KEM THOMPSON FROST, Chief Justice.

Today, for the first time, this court addresses the legal standard for establishing standing under section 102.004(a)(1) of the Texas Family Code. We conclude that, to have standing under this statute, a grand-

parent or other relative within the third degree by consanguinity must present proof that, when considered in the light most favorable to the petitioner, would enable reasonable and fair-minded people to find that the order requested is necessary because the child's circumstances on the date suit was filed would significantly impair the child's physical health or emotional development. We conclude that the grandmother in this appeal demonstrated the requisite standing under this statute to bring suit seeking sole managing conservatorship of her granddaughter and that the trial court erred in determining that the grandmother lacked standing. Accordingly, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Zoe Higgins ("Grandmother") is the paternal grandmother of the minor child who is the subject of this appeal ("Child"). After the Child's mother ("Mother") tested positive for marijuana while pregnant with the Child, the Texas Department of Family and Protective Services (hereinafter the "Department") made arrangements for the Child to be placed with the Grandmother.[1] From shortly after the Child's birth in October 2011 until February 2, 2012, the Grandmother cared for the Child at the Grandmother's home. The day the Child was returned to the care of the Child's Mother, the Grandmother filed an original suit affecting the parent-child relationship, seeking to be appointed the sole managing conservator of the Child. The Grandmother invoked section 102.004(a)(1) of the Texas Family Code as a basis for her standing to file suit.[2] In support of standing, the Grand-

1. The Department filed a status report in the trial court describing this action as a "placement." By stating in this opinion that the Child was placed with the Grandmother, we are not suggesting that the Department filed

any lawsuit against the Mother or Father or that the Department was ever appointed as a conservator of the Child.

2. The Grandmother asserted other bases for standing in her pleadings. On appeal, she

mother filed an affidavit, in which she testified, among other things, that the Child's father ("Father") was incarcerated at the time the suit was filed and that the Mother had two previous convictions for driving while intoxicated ("DWI") and one previous conviction for child endangerment. The Grandmother asserted that it is in the best interest of the Child that the Grandmother be appointed as the Child's sole managing conservator. The Grandmother further alleged that the Child's parents have a history of child neglect and physical abuse directed at the Child. The Grandmother filed a written request for a jury trial and paid the jury fee.

The Mother filed a plea to the jurisdiction, asserting that the Grandmother had no standing to bring suit. The Mother did not submit any evidence in support of the plea to the jurisdiction. In the Grandmother's response in opposition, the Grandmother presented documentary evidence from the Department as well as certified copies of judgments reflecting the Mother's various criminal convictions. The trial court conducted a hearing on the plea to the jurisdiction.

The Grandmother appeared at the hearing and the Child's parents each appeared pro se. The Grandmother testified at the hearing. The Mother and Father made arguments to the trial court but did not testify or offer any other evidence.[3] The trial court sustained the Mother's plea to

the jurisdiction and dismissed the Grandmother's suit based on lack of standing. The Grandmother appeals from the trial court's dismissal order.

## II. Standard of Review

Standing, which is a component of subject-matter jurisdiction, is a threshold issue in a custody proceeding. *In re Vogel*, 261 · S.W.3d 917, 920 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding). Whether a person has standing is a question of law, and we review an order dismissing for lack of standing under the de novo standard. *See In re I.M.S.*, No. 14–07–00638–CV, 2008 WL 5059179, at *2 (Tex.App.-Houston [14th Dist.] Dec. 2, 2008, no pet.) (mem. op.); *In re Vogel*, 261 S.W.3d at 920–21. We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex.1989).

## III. Issue and Analysis

In a single appellate issue, the Grandmother asserts that the trial court erred in determining that she lacked standing under section 102.004(a)(1) of the Texas Family Code.[4] We first address the legal standard for making this determination and then we decide whether the trial court erred in ruling that the Grandmother lacks standing.

**A. What standard applies in determining whether a grandparent or other**

---

does not argue these other bases, and we do not address them in this opinion.

**3.** The reporter's record reflects that neither the Mother nor Father testified at the hearing. The court reporter listed the witnesses who testified and did not list the Mother or the Father. The reporter's record states that "witnesses" were sworn at the beginning of the hearing. Presuming for the sake of argument that the Mother and the Father were sworn at this time, a witness can be sworn and then not testify. At the end of the hear-

ing, the trial court asked the Mother and the Father for their respective positions, but the record does not reflect that they testified as witnesses. The Mother and the Father each were acting pro se at the hearing, and their respective statements at the hearing were in the nature of argument, not testimony.

**4.** Unless otherwise specified, all statutory references in this opinion are to the Texas Family Code.

**relative of the child within the third degree by consanguinity has standing under Texas Family Code section 102.004(a)(1)?**

 When standing has been conferred by statute, the statute itself should serve as the proper framework for a standing analysis. *In re Sullivan,* 157 S.W.3d 911, 915 (Tex.App.-Houston [14th Dist.] 2005, orig. proceeding [mand. denied]). Section 102.004(a) of the Texas Family Code, entitled "Standing for Grandparent or Other Person," states:

(a) In addition to the general standing to file suit provided by Section 102.003, a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:

(1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; or

(2) both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit.

Tex. Fam.Code Ann. § 102.004(a) (West 2014).

The Grandmother has not cited, and research has not revealed, any cases from the Supreme Court of Texas or this court that address what is necessary for there to be "satisfactory proof to the court" in the context of section 102.004(a), and the issue appears to be one of first impression for this court.[5] Several sister courts of appeals have concluded that, under section 102.004(a), the trial court makes findings as to whether the petitioner proved the proposition in question and that on appeal a party may challenge the legal or factual sufficiency of the evidence supporting these findings. *See, e.g., Medrano v. Zapata,* No. 03–12–00131–CV, 2013 WL 6921500, at *5–9 (Tex.App.-Austin Dec. 31, 2013, no. pet. h.) (mem. op.) (concluding that "satisfactory proof to the court" as used in section 102.004(a) means proof by

---

5. This court previously has indicated that we should not review this determination as if it were a finding as to whether the parental presumption had been rebutted at the trial on the merits. *See In re Vogel,* 261 S.W.3d at 922. The *Vogel* court concluded that standing is determined as of the date the petition was filed and that, for there to be standing under section 102.004(a)(1), the record must contain evidence that the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development. *See id.* The *Vogel* court did not address what the record must contain to satisfy this requirement. *See id.* at 920–22. It is not clear exactly what standard of review the *Vogel* court applied. *See id.* The *Vogel* court stated a trial court's ruling regarding standing is reviewed de novo to determine "whether any evidence in the record supports standing." *Id.* at 921. The *Vogel* court did not state that there were any express or implied findings by the trial court regarding standing, nor did the *Vogel* court state that it was reviewing any such findings under a deferential standard of review to determine if they were supported by legally sufficient evidence. *See id.* at 920–22. Likewise, the *Vogel* court did not state that it was reviewing the evidence in the light most favorable to the challenged findings and indulging every reasonable inference that would support these findings. *See id.* Nor did the *Vogel* court say that the trial court is the sole judge of witness credibility and the weight to give to testimony. *See id.* The *Vogel* court stated that "the trial court reasonably could have found that [the child's] present circumstances ... would significantly impair his physical health or emotional development." *Id.* at 922. But, this language is consistent with either a legal-sufficiency analysis or an inquiry into whether the evidence, when considered in the light most favorable to the petitioner, would enable a reasonable and fair-minded factfinder to make the finding in question. *See id.*

a preponderance of the evidence and that, under this statute, the trial court makes findings as to whether the petitioner proved the proposition in question by a preponderance of evidence, the legal or factual insufficiency of which may be challenged on appeal).

■ In construing section 102.004, our objective is to determine and give effect to the Texas Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). We must ascertain that intent, if possible, from the language the Texas Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997). When statutory language is unambiguous and yields only one reasonable interpretation, this court must interpret the statute according to its plain meaning. *See Iliff v. Iliff*, 339 S.W.3d 74, 79 (Tex.2011). We must not engage in forced or strained construction; instead, we must defer to the plain sense of the words the Texas Legislature chose. *See St. Luke's Episcopal Hosp.*, 952 S.W.2d at 505.

In section 102.004, the Texas Legislature provided a basis for standing in addition to the standing provided by section 102.003. *See* Tex. Fam.Code Ann. § 102.004(a). The legal term "standing" has a technical and particular meaning. *See Bland Indep. School Dist. v. Blue*, 34 S.W.3d 547, 553–55 (Tex.2000). Words that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly. Tex. Gov't Code Ann. § 311.011(b)

(West 2014); *In re Allen*, 366 S.W.3d 696, 706 (Tex.2012). We presume the Texas Legislature enacted the current version of section 102.004 with complete knowledge of the existing law and with reference to it. *See id.*

Ordinarily, standing is based on the existence of certain facts, not the existence of certain proof. For example, an original suit seeking appointment as sole managing conservator may be filed by "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." Tex. Fam.Code Ann. § 102.003(a)(9) (West 2014). An individual filing such a suit and claiming standing under this statute need only file her petition and allege that she is a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition. *See id.; Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). In such a case, pleading a proper basis for standing is sufficient to show standing, unless a party challenges standing and submits evidence showing the non-existence of a fact necessary for standing.[6] *See Miranda*, 133 S.W.3d at 227. In that event, the petitioner must submit evidence raising a fact issue on the challenged elements to avoid a dismissal for lack of standing. *See id.* at 227–28. Suits affecting the parent-child relationship are governed by the same procedural law that applies in civil cases generally, except as otherwise provided by the Family Code. *See* Tex. Fam. Code Ann. § 105.003 (West 2014); *In re*

---

6. In this opinion we do not state or suggest that pleading standing under section 102.004(a), by itself, would be sufficient to satisfy the requirements of that statute.

*E.A.C.*, 162 S.W.3d 438, 442 (Tex.App.-Dallas 2005, no pet.).

Section 102.004(a) is an unusual provision because, in it, the Texas Legislature confers standing on certain parties based on the existence of proof rather than the existence of facts. *See* Tex. Fam.Code Ann. § 102.004(a). Under this statute, a grandparent, or other relative of the child related within the third degree by consanguinity, may have standing to file an original suit requesting managing conservatorship under certain circumstances, even though that person does not have standing under section 102.003, the general standing statute. *See* Tex. Fam.Code Ann. § 102.004(a). The Texas Legislature has decided that this additional grant of standing should be given only if "there is satisfactory proof to the court" of either of two propositions. *See id.* The proposition in issue in today's case is that the order requested is necessary because the Child's present circumstances would significantly impair the Child's physical health or emotional development. *See id.*

Under section 102.004(a), the trial court acts as a gatekeeper in assuring that satisfactory proof exists of the proposition upon which the petitioner relies to establish standing under this statute.[7] *See id.* As a threshold matter, we must determine the standard under which the trial court performs the gatekeeper function as well as the standard by which this court reviews the gatekeeper ruling.

The term "satisfactory" is not defined in the statute, and it does not have a technical or particular meaning. Accordingly, we construe this term based on its ordinary meaning. *See City of San Antonio v. Hartman,* 201 S.W.3d 667, 672, n. 19 (Tex. 2006). A dictionary definition of "satisfactory" is "giving or affording satisfaction; fulfilling all demands or requirements," and a synonym of "satisfactory" is "adequate." *See* Dictionary.com Unabridged (Random House, Inc.) *http://dictionary. reference.com/browse/satisfactory* (accessed February 14, 2014). The statutory phrase "satisfactory proof to the court" could be construed to mean whatever level of proof is deemed sufficient by the particular trial judge under whatever standard the trial judge chooses. But, such a con-

---

7. Our dissenting colleague emphasizes the effect that the plurality opinion in *Troxel v. Granville* has had on legislation and the importance of the "dictates of *Troxel.*" *See post* at pp. 894–95, 898. Several observations merit special mention. Fit parents certainly have fundamental constitutional rights to make decisions concerning the care, custody, and control of their own children. *See Troxel v. Granville,* 530 U.S. 57, 65–66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000) (plurality op.) (collecting cases and concluding that "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children"); *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944) (stating that "it is cardinal with us that the custody, care, and nurture of the child reside first in the parents, whose primary function and freedom include prepa-

ration for obligations the state can neither supply nor hinder"). But, it should be noted that Justice O'Connor's opinion in *Troxel* was a plurality opinion. *See Troxel,* 530 U.S. at 60, 120 S.Ct. at 2057. In addition, the *Troxel* plurality concluded that the visitation statute at issue was unconstitutional as applied based upon the "sweeping breadth" of the statute; the plurality did not address (1) whether the Due Process Clause of the United States Constitution requires all nonparental-visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation, (2) the scope of the parental due process right in the visitation context, or (3) the constitutionality of a statute addressing appointment of a nonparent as managing conservator of a child. *See id.,* 530 U.S. at 73, 120 S.Ct. at 2064; *In re C.A.M.M.,* 243 S.W.3d 211, 219 & n. 11 (Tex. App.-Houston [14th Dist.] 2007, pet. denied).

struction would be unreasonable because it would result in a lack of uniformity as to the standard applied by the many trial judges across Texas, resulting in arbitrary, subjective, and random application. Moreover, such a construction would give trial judges unreviewable discretion to find that a particular grandparent, or other relative of the child related within the third degree by consanguinity, has standing.

· The statutory phrase "satisfactory proof to the court" also could be construed to mean that, to have standing under section 102.004(a), the petitioner must prove the proposition in question at an evidentiary hearing at which the trial court acts as factfinder. Under this construction, if the defendant were to file a plea to the jurisdiction challenging standing and the trial court were to find the facts in favor of the standing proposition, the petitioner would have standing to proceed with the suit, but, if the trial court were to find the facts against the standing proposition and dismiss the case, the petitioner could appeal and challenge the legal or factual sufficiency of the trial court's factfindings on standing.[8] Under this construction, appellate courts would defer to the trial court's fact findings regarding standing under section 102.004(a) rather than review the trial court's determination de novo. This construction, however, contradicts a fundamental principle of Texas law underlying standing and pleas to the jurisdiction— appellate review of the trial court's ruling on a plea to the jurisdiction is conducted under a de novo standard of review. *See Miranda*, 133 S.W.3d at 228; *In re I.M.S.*,

2008 WL 5059179, at *2; *In re Vogel*, 261 S.W.3d at 920–21.

In today's case, the Grandmother timely filed a written request for a jury trial and paid the jury fee, thus invoking her constitutional right to a jury trial. *See* Tex. Const. art. 1, § 15; Tex. Fam.Code Ann. § 105.002(a),(b)(West 2014); Tex.R. Civ. P. 216. The Texas Legislature has emphasized that, in an original proceeding in which one or more parties seek appointment as a managing conservator, parties who invoke their right to a jury trial are entitled to a jury trial on the issue of the appointment of a managing conservator, and the trial court may not contravene the jury's verdict on the conservatorship issue.[9] *See* Tex. Fam.Code Ann. § 105.002(c)(1); *In re Reiter*, 404 S.W.3d 607, 609 (Tex.App.-Houston [1st Dist.] 2010, orig. proceeding).

■■■ To succeed on the merits of her suit to be appointed the sole managing conservator of the Child, the Grandmother must prove that appointment of the Mother or the Father as a managing conservator would not be in the Child's best interest because such an appointment would significantly impair the Child's physical health or emotional development. *See* Tex. Fam.Code Ann. § 153.131(a) (West 2014). For standing under section 102.004(a)(1), there must be satisfactory proof to the court that an order appointing the Grandmother as sole managing conservator of the Child is necessary because the Child's present circumstances in the care of the Mother and the Father would significantly impair the Child's physical health or emotional development. *See* Tex. Fam.

8. Our dissenting colleague adopts such an approach to the statute. *See post* at p. 891.

9. In this proceeding, the Grandmother has not challenged the constitutionality of section 102.004 or any other statute, nor do we suggest or imply that section 102.004 is unconstitutional. Instead, we consider as part of a statutory-interpretation analysis the effect of the potential interpretations of this statute on the right to a jury trial of a grandparent or other relative within the third degree by consanguinity.

Code Ann. § 102.004(a)(1). Thus, for the Grandmother to have standing, the record must contain satisfactory proof as to part of what the Grandmother has to establish to prevail on the merits of her suit. *See* Tex. Fam.Code Ann. §§ 102.004(a)(1), 153.131(a). This is a case in which the jurisdictional standing challenge implicates the merits of the petitioner's case and the plea to the jurisdiction involves evidence. The Supreme Court of Texas has held that in this situation the trial court is to review the relevant evidence to determine if a fact issue exists. *See Miranda*, 133 S.W.3d at 227; *Sewell v. Hardriders, Inc.*, No. 14–12–00541–CV, 2013 WL 3326798, at *3–4 (Tex.App.-Houston [14th Dist.] June 27, 2013, no pet.) (mem. op.). If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder (in today's case, the jury). *See Miranda*, 133 S.W.3d at 227–28; *Sewell*, 2013 WL 3326798, at *3–4. But, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court is to rule on the plea to the jurisdiction as a matter of law. *See Miranda*, 133 S.W.3d at 228; *Sewell*, 2013 WL 3326798, at *3–4. Adopting a construction of "satisfactory proof to the court" that casts the trial court as the factfinder regarding the section 102.004(a)(1) proposition would contravene these important principles of law regarding standing and pleas to the jurisdiction. *See Miranda*, 133 S.W.3d at 227–28; *Sewell*, 2013 WL 3326798, at *3–4. This contradiction would exist whether or not the petitioner invoked the right to a jury trial. Nonetheless, in cases like the one under review, in which the petitioner has invoked her right

to a jury trial, such a construction of section 102.004(a)(1) also would deprive the petitioner of the right to have the jury, rather than the trial court, be the factfinder on this issue. *See* Tex. Const. art. 1, § 15; Tex. Fam.Code Ann. § 105.002(a),(b); Tex.R. Civ. P. 216; *In re Reiter*, 404 S.W.3d at 609.

For all of the foregoing reasons, it would be unreasonable to construe section 102.004(a)(1) so that the trial court is the factfinder who makes credibility determinations as to the proposition in section 102.004(a)(1).[10]

The statutory phrase "satisfactory proof to the court" also could be construed to mean that, to have standing under section 102.004(a)(1), the trial court must determine whether there is a genuine fact issue as to the proposition in question, and appellate courts then would review this determination de novo. Under this construction, the trial court would determine whether the evidence submitted regarding the standing issue, considered in the light most favorable to the petitioner, would enable reasonable and fair-minded people to find that the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development. *See* Tex. Fam.Code Ann. § 102.004; *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex.2007).

Under this construction, the trial court still would perform a gatekeeper function, and the statute would comport with the important principles discussed above regarding de novo review of rulings on pleas to the jurisdiction when standing is implicated, the trial court's inability to sustain a

---

10. We conclude that this statutory construction is unreasonable for the reasons stated above. We do not do so because we are uncomfortable with the possibility of the trial

court acting as factfinder regarding standing under this statute or because appellate review under such a construction would be awkward.

plea to the jurisdiction if there is a fact issue regarding the jurisdictional issue, and respect for the petitioner's invocation of the right to a jury trial on issues regarding appointment of the petitioner as sole managing conservator. *See* Tex. Const. art. 1, § 15; Tex. Fam.Code Ann. § 105.002(a),(b); Tex.R. Civ. P. 216; *Miranda*, 133 S.W.3d at 227–28; *Sewell*, 2013 WL 3326798, at *3–4; *In re Reiter*, 404 S.W.3d at 609. For these reasons, we conclude that section 102.004(a) is unambiguous and yields only one reasonable interpretation. *See Iliff*, 339 S.W.3d at 79. Under this interpretation, for a grandparent, or other relative of the child related within the third degree by consanguinity, to have standing under section 102.004(a)(1), the evidence submitted regarding the standing issue, when considered in the light most favorable to the petitioner, must enable reasonable and fair-minded people to find that the order requested is necessary because the child's circumstances on the date suit was filed would significantly impair the child's physical health or emotional development. *See* Tex. Fam.Code Ann. § 102.004; *Mayes*, 236 S.W.3d at 755 (Tex.2007).

**B. Did the trial court err in concluding that the grandparent lacked standing under section 102.004(a)(1)?**

Applying this legal standard, we conduct a de novo review to determine whether the record evidence submitted regarding the standing issue, considered in the light most favorable to the Grandmother, would enable reasonable and fair-minded people to find that the order requested is necessary because the Child's circumstances on the date suit was filed (February 2, 2012) would significantly impair the Child's physical health or emotional development. *See* Tex. Fam.Code Ann. § 102.004; *Mayes*, 236 S.W.3d at 755 (Tex. 2007).

The record contains an affidavit in which the Grandmother testifies to the following:

- The Department had been contacted due to the Mother's drug use.
- On October 10, 2011, the Department, the Grandmother, the Mother, and the Father signed a plan for the Child's safety.
- The Department wanted the Mother and the Father to submit themselves to drug testing and meet other conditions.
- The Mother and the Father moved in with the Grandmother on October 10, 2011, when the Child began living with the Grandmother.
- The parents' lack of care and concern for the Child was the Grandmother's immediate concern. Rarely would the Mother hold or feed the Child. When the Mother did hold the Child, it was as if the Child was a foreign object.
- From the day they moved into the Grandmother's house, the Mother and Father had long extended absences away from the Child. Rarely would the parents check on the Child throughout the day. When the parents, particularly the Mother, were at home with the Child, they rarely would hold or care for the Child.
- Initially the Child's parents lived with the Grandmother; however, the Father refused to stop drinking and soon was asked to leave the Grandmother's home. The Mother soon followed him. Once out of the Grandmother's home, the parents sporadically visited the Child and only rarely called to inquire about the Child. At one point, the parents did not visit or call for 22 days. Most of the time, the calls were made by the Father.

- Between the time the Child's parents left the Grandmother's home and the time the Department returned the Child to the Mother, the parents had spent a total of 41 hours with the Child.

- The Grandmother was concerned about the parents' lack of care for the Child, but the Grandmother made every effort to ensure that the parents bonded with the Child.

- In the Grandmother's opinion, the parents' interest in the Child relates to the pecuniary benefits the Child represents rather than the well-being of the Child. The Grandmother is scared that the Child will be subjected to neglect and injury if a third party is not present.

- The Mother has been charged with endangering a child three times and convicted of the offense once. The Mother is a drug-and-alcohol abuser and has been charged and convicted of driving while intoxicated twice.

- The Mother has had five children who have been placed with the Department between 2008 and 2011.

- The Father was incarcerated at the time of the Grandmother's affidavit. He, too, has a history of alcohol and drug abuse.

- The Grandmother believed that the Child's parents would endanger the Child's physical or emotional welfare.[11]

The record also contains certified copies of the Mother's two DWI convictions and one child-endangerment conviction.[12]

At an evidentiary hearing on the Mother's plea to the jurisdiction, the Grandmother testified to the following additional facts:

- In October 2011, the Department had placed the Child in the Grandmother's care when the Child was five days old because the Mother had tested positive for marijuana while pregnant with the Child.

- The Child's parents moved into the Grandmother's home at that time. For about nine days thereafter, both parents left the Child in the Grandmother's care for as many as eleven hours a day as they searched for an apartment.

- On one occasion, the Father, who had consumed alcohol, and the Mother, who was holding the Child, had an argument in the Grandmother's home. Each parent was screaming and cursing at the other. The Mother refused to give the Grandmother the Child after the Grandmother asked her to do so.

- The Grandmother was concerned during this incident because the Father was very angry and each parent made threatening motions toward

---

11. In her appellant's brief, the Grandmother asserted many of the facts contained in her affidavit. In this section of her brief, she also asserted that the parents would fight violently and loudly in her home. On one occasion, the Mother kept the Child in the middle of a violent argument, swinging and shaking the Child around. The Mother and the Father have not filed an appellate brief and thus have not contradicted these facts; therefore, this court accepts these facts as true. *See* Tex. R.App. P. 38.1(g). Even though we accept these facts as true on appeal, we still must examine the record to determine if it contains evidence that, when considered in the light most favorable to the petitioner, would enable reasonable and fair-minded people to find that the order requested is necessary because the Child's circumstances on the date suit was filed would significantly impair the Child's physical health or emotional development.

12. The conviction for endangering a child occurred before the Child was born, so the child endangered was not the Child.

the other. According to the Grandmother, the Child's legs were "swinging like crazy" and "they were shaking the baby around," but the Child was not hurt. The Grandmother was concerned that the Mother would allow a two-week old baby to be in the middle of an extremely volatile and possibly violent situation.

- Following this incident, the Grandmother asked the Father to leave the Grandmother's home and he complied. The Mother left two days later.
- The Child remained in the Grandmother's care for several months until the Department returned the Child to the Mother's care on February 2, 2012, the same day the Grandmother filed her original petition in this case.

The Mother and the Father appeared at the evidentiary hearing and represented themselves. Though they made legal arguments, neither parent presented any evidence.

Under a de novo review, we conclude that, considering the record evidence in the light most favorable to the Grandmother, the evidence submitted regarding the standing issue would enable reasonable and fair-minded people to find that the order the Grandmother requested (to be named sole managing conservator of the Child) is necessary because the Child's circumstances on the date suit was filed (February 2, 2012) would significantly impair the Child's physical health or emotional development.[13] *See* Tex. Fam.Code Ann. § 102.004(a)(1). Thus, the trial court erred in sustaining the plea to the jurisdiction and dismissing the Grandmother's suit for lack of standing. Accordingly, we sustain the Grandmother's sole appellate issue.

## IV. CONCLUSION

Under the applicable legal standard, the record contains the proof necessary for the Grandmother to have standing under section 102.004(a)(1). Because the trial court erred in dismissing the Grandmother's suit for lack of standing, we reverse the trial court's judgment, and remand for further proceedings consistent with this opinion.

JAMISON, J., dissenting.

MARTHA HILL JAMISON, Justice, dissenting.

The Legislature, under section 102.004(a),[1] allows certain nonparent relatives to file suit requesting managing conservatorship of a child upon "satisfactory proof to the court" that the requisites for standing thereunder have been met.[2] The majority, in essence, has construed this language to mean "satisfactory proof to the appellate court" rather than "satisfactory proof to the [trial] court." For this reason, I respectfully dissent.

> In addition to the general standing to file suit ... a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that ... the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development[.]
>
> Tex. Fam.Code § 102.004(a)(1).

---

**13.** This determination does not mean that the Grandmother has rebutted the parental presumption or proved her case at the trial on the merits. Rather, we merely conclude that the Grandmother has standing under section 102.004(a)(1) to bring the suit.

**1.** All section references are to the Texas Family Code.

**2.** The relevant portion of the statute states:

I disagree with the majority's articulation of the standard and scope of review required to review the judge's evaluation of the proof in this context. Applying in this non-Department case[3] what I believe to be the proper standard of review—legal sufficiency of the evidence—and scope of review—implying the findings necessary to support the court's judgment that Grandmother did not present satisfactory proof to the court—I would affirm.

The majority is correct and understated in saying that the Legislature has drafted an "unusual" provision in section 102.004(a). The statute employs a familiar term, "standing," but requires a different method of demonstrating standing than that already engrained in our jurisprudence. Standing usually requires a showing of particularized harm and typically is satisfied by pleading certain jurisdictional facts.[4] *See Bliss & Glennon Inc. v. Ashley*, 420 S.W.3d 379, 389–90 (Tex.App.-Houston [1st Dist.] 2014, no. pet. h.). In the Family Code section at issue, however, merely pleading jurisdictional facts is not enough to demonstrate standing; the Legislature also requires an unusual quantum and quality of evidence to be adduced: "satisfactory proof to the court." *See* Tex. Fam.Code § 102.004(a).

"Satisfactory proof to the court" does not comport with any evidentiary standard in general use elsewhere in the Family Code or other Texas statutes.[5] *See, e.g.,* Tex. Fam.Code § 105.005 ("Except as otherwise provided by this title, the court's findings shall be based on a preponderance

of the evidence."); *id.* § 161.001 (requiring "clear and convincing evidence" to terminate parent-child relationships). In applying section 102.004(a), are we to equate "satisfactory proof" with a preponderance of the evidence or is "satisfactory proof" a type of finding "otherwise provided by" the Family Code, requiring its own evidentiary standard?

## I. What is Satisfactory Proof to the Court?

Although I agree with the majority that the word "satisfactory," *i.e.,* adequate,[6] can be construed based on its ordinary meaning, I disagree that its ordinary meaning is "whether there is a genuine fact issue"—in other words, more than a scintilla. Maj. Op. at III.A.; *see Kamat v. Prakash*, 420 S.W.3d 890, 898–99 (Tex.App.-Houston [14th Dist.] 2014, no. pet. h.) (citing *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex.2009)) (noting appellate court must overrule legal sufficiency challenge to finding of fact when "more than a scintilla of competent evidence supports it"). In the context of a grandparent's right to interfere with a parent-child relationship, merely "more than a scintilla" is neither adequate nor satisfactory.

Sister courts have somewhat conflated the definition and the evidentiary standard required under section 102.004(a) by defining "satisfactory proof" as a "preponderance of the evidence." *See Mauldin v. Clements*, No. 01–12–00016–CV, 428 S.W.3d 247, 262–65, 2014 WL 421292, at *14 (Tex.App.-Houston [1st Dist.] Feb. 4,

---

3. The majority incorrectly states that the Department "placed" the Child with Grandmother or "returned" the Child to Mother, as discussed *infra*.

4. As the Majority explains, "Ordinarily, standing is based on the existence of certain facts, not the existence of certain proof." Maj. Op. at III.A.

5. The term also is used in section 102.004(b). Research has revealed only one other Texas statute using the term, regarding certain reimbursement claims. *See Tex. Est. Code* § 1155.102.

6. *See The American Heritage Dictionary* 1092 (2d coll. ed. 1991).

2014, no. pet. h.) ("In a family law case, when the petitioner is statutorily required to establish standing with 'satisfactory proof,' the evidentiary standard is preponderance of the evidence."); *Medrano v. Zapata,* No. 03–12–00131–CV, 2013 WL 6921500, at *7 (Tex.App.-Austin Dec. 31, 2013, no. pet. h.) (mem. op.) (" 'Satisfactory proof to the court' ... denotes proof by a preponderance of the evidence."); *In re Hogard,* No. 10–13–00246–CV, 2013 WL 5603853, at *2 (Tex.App.-Waco Oct. 10, 2013, no pet.) (mem. op.) (same); *In re C.A.H.,* No. 11–10–00040–CV, 2011 WL 947082, at *2 (Tex.App.-Eastland Mar. 3, 2011, no pet.) (mem. op.) (same); *In re N.L.D.,* 344 S.W.3d 33, 38 (Tex.App.-Texarkana 2011, no pet.) (requiring threshold finding based on a preponderance of the evidence); *Von Behren v. Von Behren,* 800 S.W.2d 919, 921 (Tex.App.-San Antonio, 1990, writ denied) (applying preponderance of the evidence standard).[7] Until the Legislature or the Texas Supreme Court clarifies whether section 102.004(a)(1) created a new evidentiary standard, I would follow our sister courts and require proof by a preponderance of the evidence of Grandmother's standing. Further, I would imply all findings necessary to support the trial judge's determination, as discussed below. After all, the Legislature stated the proof should be "satisfactory ... *to the court.*" Tex. Fam.Code § 102.004(a) (emphasis added).

## II. Standards of Review

### A. Jurisdictional Facts

I agree with the majority that, generally, whether a plaintiff has pleaded sufficient facts to establish standing is a threshold issue that we review de novo. Maj. Op. at III.B.; *see Tex. Dept. of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004); *see also Jansen v. Fitz-*

*patrick,* 14 S.W.3d 426, 431 (Tex.App.Houston [14th Dist.] 2000, no pet.). When standing has been conferred by statute, however, the statute itself should serve as the proper framework for the standing analysis. *In re Smith,* 260 S.W.3d 568, 572 (Tex.App.-Houston [14th Dist.] 2008, no pet.). If a petitioner fails to establish proper standing, then the trial court must dismiss the suit. *Compton v. Pfannenstiel,* No. 01–13–00062–CV, 2014 WL 576175, at *2 (Tex.App.-Houston [1st Dist.] Feb. 13, 2014, no. pet. h.).

Under section 102.004(a)(1), Grandmother was required to plead the following jurisdictional facts: this is an original suit requesting managing conservatorship, she is a grandparent, and she has proof (pleadings not being proof) of the requisite facts. The majority correctly notes that these jurisdictional facts *as pleaded* should be construed liberally in favor of the pleader. *See Miranda,* 133 S.W.3d at 226; *see also N.L.D.,* 344 S.W.3d at 37–38 (applying *Miranda* standard to pleaded facts of consanguinity under 102.004(a) of three different petitioners and finding two did not satisfy the statute and, therefore, did not have standing). I disagree, however, that it would be "unreasonable" to construe 102.004(a)(1) so that the trial court is the fact-finder who makes credibility determinations thereunder, as the majority holds. Maj. Op. at III.A. I would hold the trial court's finding that Grandmother's proof was not "satisfactory" should be reviewed as we review other trial-level fact-findings.

### B. Satisfactory Proof to the Court

The Legislature places an additional burden on the party seeking to demonstrate standing under section 102.004(a) beyond sufficient pleadings: to present "satisfactory proof to the court" of the

7. "The term 'preponderance of the evidence' means the greater weight of the credible evidence admitted in [the] case." Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: General Negligence & Intentional Personal Torts* PJC 1.3 (2010).

requisites thereunder.[8] I believe that, by doing so, the Legislature intended for the trial court to serve as a gatekeeper, limiting the access of nonparent relatives to file original suits to determine conservatorship. *See Medrano*, 2013 WL 6921500, at *6 ("[T]he relationship of grandparent to child is not alone considered sufficient to confer standing to bring a suit for conservatorship-to the contrary, chapter 102 embodies a strong public policy that grandparents should 'not [be] entitled to disrupt the child's family life and initiate suits for managing conservatorship except in limited circumstances.'" (citing *Whitworth v. Whitworth*, 222 S.W.3d 616, 622 (Tex.App.-Houston [1st Dist.] 2007, no pet.))); *see also infra* III. (discussion regarding grandparental access).

I would defer to the trial court's assessment of whether the proof presented to it by Grandmother was satisfactory, consid-

ering the evidence in a light favorable to the trial court's ruling and implying findings to support the judgment. *See Compton*, 2014 WL 576175, at *2; *see also N.L.D.*, 344 S.W.3d at 38 (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990)). The majority acknowledges that the Legislature intended the trial court to perform a gatekeeper function (Maj. Op. at III.A.), but then opens wide the gate and throws away the key.[9] Despite the unambiguous language used in the statute, the majority is uncomfortable with a construct that "casts the trial court as the factfinder" regarding satisfactory proof to the court because it makes appellate review awkward (*see* Maj. Op. at III.A.).[10] Perhaps so, but we can no more rewrite the statute to make our job easier than we can to alter the outcome of an opinion.[11]

Here, the trial court held a hearing where evidence was presented. Because

8. Therefore, I disagree with the majority that, in this circumstance, merely pleading a proper basis for standing is sufficient.

9. The traditional standard of appellate review for decisions of the trial court as an evidentiary gatekeeper is an abuse of discretion. *See, e.g., Enbridge Pipelines (E.Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 262 (Tex.2012) (applying abuse of discretion standard to trial court's gatekeeping function to exclude irrelevant and unreliable expert evidence); *see also E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995).

10. In fact, this court previously has deferred to the trial court as fact-finder in the standing analysis under section 102.004(a). *See In re Vogel*, 261 S.W.3d 917, 922 (Tex.App.-Houston [14th Dist.] 2008, no pet.) ("Given these facts, we conclude that the trial court reasonably could have found that [the child's] present circumstances ... would significantly impair his physical health or emotional development.").

11. The following courts have applied a scope of review deferential to the trial court's fact-finding to analyze standing under section

102.004(a): the First, Third, Fourth, Sixth, and Seventh Courts of Appeals. *See, e.g., Compton*, 2014 WL 576175, at *2 ("In our review, we consider the evidence in a light favorable to the trial court's ruling."); *Medrano*, 2013 WL 6921500, at *8 ("We are likewise required to view the evidence in the light favorable to the district court's findings, drawing reasonable inferences in their favor, and presuming that the court resolved any evidentiary conflicts in a manner supporting its findings."); *N.L.D.*, 412 S.W.3d at 814 (applying abuse of discretion standard); *In re S.M.D.*, 329 S.W.3d 8, 13 (Tex.App.-San Antonio 2010, pet. dism'd) ("We review the entire record to determine if the trial court's implied findings are supported by any evidence."); *In re Burrows*, No. 07-98-0178-CV, 1999 WL 270176, at *2 (Tex.App.-Amarillo May 4, 1999, no pet.) ("[I]n a case such as this in which the trial court has made findings of fact and those findings are challenged on appeal, they are reviewed under the same standards as those used to review jury findings"). The Fifth Court of Appeals has also deferred to the trial court's fact-finding in a similar context. *See In re M.P.B.*, 257 S.W.3d 804, 808 (Tex. App.-Dallas 2008, no pet.) ("When, as here, the trial court makes no separate findings of

the trial court did not make findings of fact and conclusions of law, we must imply that it found Grandmother's evidence of standing under section 102.004(a)(1) to be unsatisfactory. *See Mauldin*, 2014 WL 421292, at \*14; *see also Compton*, 2014 WL 576175, at \*2. I would review the evidence in a light favorable to the trial court's findings, drawing reasonable inferences in its favor and presuming the court resolved any evidentiary conflicts in a manner supporting its implied findings. *Medrano*, 2013 WL 6921500, at \*8 (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)) ("[T]rial-level fact-finders 'are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary.' "). I would apply this scope of review to determine whether the proof presented was such that a reasonable fact-finder could conclude that Grandmother did not establish that the "order requested was necessary because the child's present circumstances would significantly impair the child's physical health or emotional development." *See* Tex. Fam.Code § 102.004(a)(1); *see also Medrano*, 2013 WL 6921500, at \*9.

## III. Grandparental Access

In 2000, the United States Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), precipitated a major shift in the way courts were to apply statutes allowing for grandparental access to a grandchild. *Sampson & Tindall's Texas Family Code Annotated* 615 (Aug. 2013 ed.) *(Sampson & Tindall)*. *Troxel* reaffirmed a long line of cases holding that parents have a fundamental constitutional right to have and raise children without interference from the State except in extraordinary circumstances. *Id.* In 2004, the Attorney General of Texas issued an opinion concluding that Texas statutes in effect at the time granting grandparental access to grandchildren could be applied constitutionally, but the principles expressed in *Troxel* must be observed. *Id.* (citing Tex. Att'y Gen. Op. No. GA–0260 (2004)). The attorney general's opinion summarized "[t]he message of *Troxel*" as follows: "[S]tate statutes that infringe upon a parent's right to control the care and custody of his or her children are subject to strict scrutiny." Tex. Att'y Gen. Op. No. GA–0260.

Subsequently, the Legislature raised the bar for grandparental access to grandchildren, requiring evidence that the denial of access "would significantly impair the child's physical health or emotional well-being." Tex. Fam.Code § 153.432; *see also Sampson & Tindall* 615. The trial court must make a preliminary determination that the facts stated would, if true, demonstrate the truth of that allegation. Tex. Fam.Code § 153.432; *see also Sampson & Tindall* 615. Even so, the trial court retains discretion to order or refuse to order access and possession. Tex. Fam. Code § 153.433; *see also Sampson & Tindall* 615.

The Legislature similarly amended section 102.004(a)(1) to mirror the language used in section 153.432, requiring the grandparent to present "satisfactory proof to the court" that "the child's present circumstances would significantly impair the child's physical health or emotional devel-

fact or conclusions of law, we must draw every reasonable inference supported by the record in favor of the trial court's judgment." (finding grandparental standing under Texas Family Code section 102.003(9) (conferring standing on "a person ... who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition"))).

opment."[12] Accordingly, the statute reflects a policy by the Legislature to follow the dictates of *Troxel:* that "there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." 530 U.S. at 68–69, 120 S.Ct. 2054.

In that connection, the Legislature provided a mechanism for the trial court to be a gatekeeper to safeguard the fundamental constitutional right of parents to make decisions regarding the rearing of their own children. To protect this vital interest, the gate through which grandparents obtain standing to request managing conservatorship must be narrow. In light of these principles, the basis for standing at issue here is intended to restrict nonparent relatives from bringing a custody lawsuit except in "certain extreme circumstances": it is not enough to show the child would be "better off" with the relative seeking custody. *See Medrano,* 2013 WL 6921500, at *6.

Long before *Troxel* was decided, the Legislature had extensively amended the Family Code to permit grandparents and others to bring an original suit affecting the parent-child relationship under only limited, "specific factual circumstances." Hearing on Tex. S.B. 455 Before the Senate Jurisprudence Comm., 69th Leg., R.S. (Mar. 5, 1985) (statement of Professor John S. Sampson on behalf of State Bar of Texas Family Law Section). That amendment created "a pretty severe test for grandparents ... to seek custody" and was "balanced out" to "prevent ... grandparents from bringing a suit for custody every time they disagree with the way their daughter or daughter-in-law is raising a child." *Id.* The amendment was intended as a compromise "to strike a balance between situations where people legitimately ought to be brought in and heard before the court while at the same time not opening the courthouse doors so that family autonomy or family privacy can be invaded just at the will or whim of others." *Id.* Accordingly, the trial court was given the discretion to decide whether grandparents have standing under the "specific factual circumstances" provided for in the amendment.[13]

Grandmother's claims are created by statute—namely, the Family Code—and Grandmother's standing to assert them is likewise governed by that Code's "comprehensive statutory framework for standing in the context of suits involving the parent-child relationship." *See Jasek v. Tex. Dept. of Family & Protective Servs.,* 348 S.W.3d 523, 528 (Tex.App.-Austin 2011, no pet.) (quoting *In re H.G.,* 267 S.W.3d 120, 124 (Tex.App.-San Antonio 2008, pet. denied)). Accordingly, Grandmother had the burden of establishing her standing within the prescribed parameters of that statuto-

---

**12.** Prior to that amendment, the standard for grandparental standing was lower. Instead of being required to show "significant impairment" of the child's "physical health or emotional development," the grandparent had to show only "a serious question" concerning the child's "physical health or welfare." Conference Committee Report, Tex. H.B. 260, at 2, 79th Leg., R.S. (3d printing May 28, 2005).

**13.** The 1985 amendment for the first time allowed grandparents or "any other person deemed by the court to have had substantial past contact with the child" to bring an original suit affecting the parent-child relationship upon "satisfactory proof to the court" that, as relevant here, "the child's environment with the parent or parents, the managing conservator, or the custodian may endanger the child's physical health or significantly impair the child's emotional development." *See* Senate Committee Report, Tex. S.B. 455, at 1, 69th Leg., R.S. (Mar. 13, 1985).

ry language. *See id.; see also Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984). Grandmother has relied on one of the "limited circumstances" in which grandparents may have standing under chapter 102, which are intended to restrict grandparental standing to "certain extreme circumstances." *See Medrano,* 2013 WL 6921500, at \*6; *see also Von Behren v. Von Behren,* 800 S.W.2d 919, 921 (Tex. App.-San Antonio 1990, writ denied) (observing, with reference to an earlier version of this standing limitation, that it is " 'designed to strike a balance between those grandparents ... who undertake a rescue mission and those who are just out to do a little officious intermeddling to correct the 'unsatisfactory' childrearing methods of the younger generation.' " (quoting John J. Sampson, Texas Family Code & Commentary, 17 Tex. Tech. L.Rev. 1045, 1073 (1986))).

## IV. The Rest of the Story: The Proof before the Trial Court

The record contains Grandmother's brief, Grandmother's selections from the clerk's record, and the reporter's record from the hearing on the motion to dismiss where Grandmother was "called" as a witness. Both parents also appeared pro se

at the hearing and spoke with the judge. *See Medrano,* 2013 WL 6921500, at \*5 n. 9 (considering standing arguments made to trial court at hearing). It is unclear whether the parents were sworn as witnesses at the hearing. The trial court stated, "Everyone who's going to testify in this matter, please raise your right hand." This statement is followed in the record by the notation "(Witnesses sworn)," which indicates one or both parents were sworn in as witnesses along with appellant. The majority considers the statements by the pro se parties to be non-evidentiary, ignoring the realities of a busy trial court where not every witness sits in the witness chair.[14] In considering the evidence in a light favorable to the trial court's ruling and implying findings to support the judgment, I would presume that the trial court took these statements into account in its determination of standing.

In response to the testimony adduced at the hearing and recited in the majority opinion, Maj. Op. at I. and III.B., the trial court expressed concern that Grandmother had presented no evidence that the Child's *present* circumstances significantly impaired her health or emotional develop-

---

14. The trial judge has broad discretion to manage trial proceedings. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 240–41 (Tex.2001). This authority is set forth, in part, in the Texas Rules of Evidence: "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence...." Tex.R. Evid. 611(a). A trial court must have leeway to manage its courtroom in the most expedient manner. *See Francis,* 46 S.W.3d at 241. Moreover, in a bench trial, it is the trial judge who observes the appearance and demeanor of the witnesses, evaluates the personality of the contending claimants, and assesses the needs of the child in a suit affecting the parent-child relationship. *In re J.G.,* 412 S.W.3d 83, 94 (Tex.App.-Fort Worth 2013, no pet.) (Dauphinot, J., dissenting).

At the hearing, the trial court asked the Father to speak after Grandmother completed her testimony. It is unclear whether the court intended the Father's comments at that point to be testimony or argument. The Father had no pending motion.

THE COURT: Anything else you want to say, sir?

[Father]: Yes, ma'am. A lot of what she said is inaccurate. I don't want to go back and pick all the details.... Like I said, the baby's well cared for. She's not in any kind of danger. She's well cared for and me and her mother are getting along swimmingly. There's a lot of love in the house and everything is fine at this point in time.

ment.[15] *See Medrano*, 2013 WL 6921500, at *7 (" 'Present circumstances' . . . refer[s] to the state of affairs that existed as of the date [the relative nonparent] file[s] suit.").[16] The trial court noted that Grandmother's original petition did not even allege standing under 102.004(a)(1).[17] It is undisputed that, when Grandmother filed suit, the Child was living with her parents away from Grandmother's residence. The trial court also noted that the Department had not filed a case against the parents. Grandmother's counsel told the trial court the Department said that the Mother had "done her services" under the agreed plan.

When, as here, there is no explicit statement by the trial judge that she was taking notice of the court's file, we presume that the trial court took judicial notice of "what has previously taken place in the case tried before it, and the parties are not required to prove facts that the trial court judicially knows." *See In re A.W.B.*, No. 14–11–00926–CV, 2012 WL 1048640, at *3 (Tex.App.-Houston [14th Dist.] Mar. 27, 2012, no pet.) (mem. op.); *see also In re J.J.C*, 302 S.W.3d 436, 446 (Tex.App.-Houston [14th Dist.] 2009, pet. denied). The record is unclear as to the extent of the Department's involvement with K.D.H.

The Department was originally sued by Grandmother as a defendant, but we have none of its pleadings in our record. However, we do know from the "Report to the Court" filed by the Department and in the clerk's record that the Department, as of February 28, 2012, recommended "continued" placement of the child with the Mother.

The Report further stated:

- The Department has not been named temporary managing conservator in this suit.[18]
- Mother was merely "asked" to participate in various programs and agreed to do so; however, there is no order in the record.
- Mother was observed in family visitation by the Department on at least five occasions.

Moreover, according to the docket sheet in the record, the parties appeared before the trial court on five other occasions before the hearing on the motion to dismiss.[19] The trial court was entitled to take into account that case history in assessing the credibility of the witnesses and making its determination as to standing. *See In re A.W.B.*, 2012 WL 1048640, at *3.

---

**15.** The Father stated, "The current conditions that my child's living in do not impair her development. She's not in any kind of danger. She's well taken care of. She's fed. She's cared for. She has all the affection and love she needs or wants."

**16.** Grandmother filed suit February 2, 2012.

**17.** Grandmother initially alleged standing based on voluntary relinquishment by the parents and her "actual care, custody and possession" of the Child since October 5, 2011, which is less than the required six months. Grandmother added allegations under section 102.004(a)(1) in a supplemental and amended petition filed June 13, 2012.

**18.** The report does not reflect that anyone other than the parents ever was named managing conservator of the Child; therefore, it is

not accurate to say the Child was "returned" to the Mother or to imply that the Child was "placed" with anyone else, although the Department approved the Child's living arrangement with the Mother at Grandmother's residence and referred to Grandmother and her husband as "voluntary caregivers."

**19.** Entries on docket sheets may not be used to contradict trial court orders and are not generally considered to be trial court orders or findings. *Haut v. Green Cafe Mgmt., Inc.*, 376 S.W.3d 171, 178–79 (Tex.App.-Houston [14th Dist.] 2012, no pet.). Regardless, docket entries may be used by appellate courts to determine what transpired in the trial court. *Id.*

## V. Response to Majority's *Sua Sponte* Arguments

The majority suggests that because Grandmother paid a jury fee, she had a constitutional right to a jury trial (and, by extension, a constitutional right to have a jury decide whether she presented satisfactory proof). Despite the fact that Grandmother did not make this argument, the majority also sidesteps whether Grandmother had standing to seek a jury trial in the first place. An appellate court may *sua sponte* determine it has no jurisdiction, because without jurisdiction, it cannot act; however, it may not *sua sponte* create jurisdiction for a party. *See Texaco, Inc. v. Shouse*, 877 S.W.2d 8, 11 (Tex.App.-El Paso 1994, no writ) (acknowledging that court of appeals is required *sua sponte* to determine whether it has jurisdiction but may not create jurisdiction by consent or stipulation of the parties or waiver). A party without standing does not have a constitutional right to maintain a lawsuit, whether tried by a jury or the court. Also, since section 102.004(a) clearly places the fact-finding duties with the trial court, the majority is implying the statute is unconstitutional. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 234 n. 4 (Tex.2011) ("[W]e only decide constitutional questions when we cannot resolve issues on other grounds.").

The majority also argues on Grandmother's behalf that the merits of Grandmother's case are implicated in the Mother's standing challenge (to support her request for appointment as managing conservator, Grandmother pleads, among other complaints, that the Mother's access to the Child would endanger the Child's physical health or emotional welfare). The majority concludes that the trial court cannot

rule on the issue of satisfactory proof to the court, therefore, unless the evidence is conclusive, citing *Miranda*. *See* 133 S.W.3d at 228. If there is a fact question, the majority says, the issue must go to a jury. *See* Maj. Op. at III.A. However, as set forth above, when standing has been conferred by statute, it is the statute that creates the proper framework for a standing analysis. *In re Smith*, 260 S.W.3d at 572. Standing under section 102.004 arises from the "comprehensive statutory framework for standing in the context of suits involving the parent-child relationship." *Medrano*, 2013 WL 6921500, at *5. Moreover, standing with regard to suits affecting the parent child relationship that implicate the "[fundamental] interest of parents in the care, custody, and control of their children" must be analyzed in accordance with *Troxel*. *See* 530 U.S. at 65–66, 120 S.Ct. 2054; *see also In re Russell*, 321 S.W.3d 846, 859 (Tex.App.-Fort Worth 2010, no pet.) ("We construe the standing statutes in a manner consistent with the constitutional principles stated in *Troxel*.").

I disagree with the majority that the trial judge is bound by *Miranda* to abstain when the statute explicitly requires the trial court to act.

## VI. Conclusion

In implying the findings necessary to support the trial court's determination, I would conclude that a reasonable fact-finder could have found that Grandmother did not present by a preponderance of the evidence "proof satisfactory to the court" that the Child's present circumstances as of February 2, 2012 would significantly impair the Child's physical health or emotional development.[20] *See* Tex. Fam.Code

---

**20.** Even applying the standard articulated by the majority, I would find Grandmother failed to create an issue of material fact of *present* circumstances *significantly* impairing the Child's health. Present means as of the date of filing. *Medrano*, 2013 WL 6921500, at *7.

§ 102.004(a)(1). As the trial court noted at the hearing, Grandmother presented evidence only of the child's past circumstances, and the trial court was entitled to consider the Department's recommendation that the Mother maintain custody, and indeed, as the trial court noted, the Department's decision not to pursue a case against the parents.

Moreover, Grandmother was required to present evidence of "specific, identifiable behavior or conduct of the parent[s]," as shown by "specific acts or omissions," and evidence that such acts or omissions "will probably cause that harm." *See S.M.D.*, 329 S.W.3d at 16. Grandmother presented no evidence of acts or omissions by Mother or of present circumstances that would harm the Child. In fact, Grandmother testified that the Child had not been hurt during the Mother and Father's interactions with the Child in the Grandmother's home.